NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0109n.06

No. 12-3234

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
*Jan 30, 2013*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE NORTHERN |
| WILSON DOMINGUEZ, | ) | DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellant. | ) | |

Before: KETHLEDGE and WHITE, Circuit Judges; LUDINGTON, District Judge.[*]

LUDINGTON, District Judge. Wilson Dominguez was sentenced to 30 months in custody to be followed by three years' supervised release after he pled guilty to selling 3,000 ecstasy pills in violation of 21 U.S.C. § 841(a). After being released and deported to the Dominican Republic in August 2008, Dominguez returned to the United States. In April 2009, he violated the conditions of his supervised release, admitted the violations, and was sentenced to six months in prison with credit for time served. The court then imposed a term of supervised release until August 2012, stating it was "extend[ing] for one year the terms of [Dominguez's] supervised release." Oct. 19, 2009 Hr'g. Tr. 9. Twenty-three months later, in September 2011, Dominguez again violated his supervised release when he was arrested for trafficking three kilograms of cocaine.

For his second supervised release violation, Dominguez received an eighteen-month custodial sentence. On appeal, he claims the district court did not expressly revoke his supervised release term

---

[*]The Honorable Thomas L. Ludington, United States District Judge for the Eastern District of Michigan, sitting by designation.

in October 2009 when the six-month custodial sentence was imposed, and as a result, improperly extended it. Dominguez concludes he was therefore not subject to supervised release at the time of his arrest in September 2011. He also argues that the eighteen-month sentence he received for the second violation is procedurally and substantively unreasonable because the court did not expressly address the 18 U.S.C. § 3553(a) factors.

Dominguez's attack on the October 2009 sentence is untimely and therefore cannot be reviewed. Further, the district court's attention to the § 3553(a) factors was legally sufficient, and his 18-month sentence is both procedurally and substantively reasonable. We affirm.

**I**

In 2006, Dominguez pled guilty to selling 3,000 ecstasy pills. A Class C felony, the court was authorized to impose a term of imprisonment up to 20 years. 21 U.S.C. § 841(b)(1)(C). In addition, upon any sentence of imprisonment, the court was required to establish "a term of supervised release of at least 3 years." *Id*. Pursuant to that authority the court sentenced Dominguez to 30 months in custody and three years of supervised release.

Dominguez's supervised release commenced on August 14, 2008 when he was transferred from the custody of the Federal Bureau of Prisons into the custody of Immigration and Customs Enforcement (ICE) pending removal. Dominguez was then deported to his native Dominican Republic. At that time, his supervised release was slated to end on August 13, 2011.

Dominguez then attempted to re-enter the United States, and on April 20, 2009 he was arrested and charged in the Southern District of Texas with illegal re-entry in violation of 8 U.S.C. § 1326. This charge would later be dismissed after it was discovered that Dominguez's father was

a naturalized U.S. citizen. Dominguez was, however, alleged to have committed two other supervised-release violations: failing to notify the Probation Office within 72 hours of his arrest for illegal re-entry, and failing to pay a portion of the special assessment fee charged for his original conviction. After the April arrest in Texas, Dominguez waited five months in custody until a supervised release hearing was held in Ohio, where the original drug conviction occurred.

On September 29, 2009, Dominguez's supervised release hearing commenced. When the court raised the two alleged supervised release violations, Dominguez acknowledged his guilt. His counsel explained, "With regard to the supervised release violations stemming from the failure to pay the special assessment and the failure to contact law enforcement, we would enter an admission with regard to those violations." Sep. 29, 2009 Hr'g. Tr. 8. At that time, the investigation regarding Dominguez's citizenship status was still pending. The court noted that Dominguez's citizenship status would weigh heavily on its decision, and the hearing was continued for three weeks.

On October 19, 2009, the parties reconvened for the continued hearing. The court began by establishing that Dominguez had admitted to the two supervised release violations outlined above, and that the charge against him for illegal re-entry had been dismissed. Oct. 19, 2009 Hr'g. Tr. 3–4. The court established that the remaining violations were "both grade C violations" with a Guidelines range for imprisonment of "three to nine months." *Id*. at 10. Defense counsel requested the court to impose a sentence of six months, crediting the time Dominguez had already served in custody, with the understanding that "he would remain on supervised release" afterwards. *Id*. at 5.

The court did just that. It imposed a term of six months' incarceration, with credit for time served, and "extend[ed] for one year the terms of the defendant's supervised release." *Id*. at 9.

When the court asked if Dominguez had anything else to offer, defense counsel responded "No, Your Honor. Thank you very much." *Id*. at 10. In fact, no objections were raised during the hearing. Dominguez was then released from the Bureau of Prisons on supervised release for a term ending on August 13, 2012.

On September 9, 2010, pursuant to the conditions of his supervised release, Dominguez submitted to a drug test. He tested positive for cocaine. Three weeks later a supervision report was filed, indicating that Dominguez had violated the terms and conditions of his supervised release by testing positive for drugs. The Probation Office requested a modification of the original supervised release conditions, suggesting outpatient drug counseling and testing for Dominguez, as well as continued personal supervision. The report also requested a reduction of the term of supervised release imposed by the court in October 2009 to conform with 18 U.S.C. § 3583(b)(2).[1] The United

---

[1] Both parties apparently believe that 18 U.S.C. § 3583(b)(2) controls Dominguez's term of supervised release. However, 21 U.S.C. § 841(b)(1)(C) outlines the penalties for the crime Dominguez pled guilty to in 2006. It reads in pertinent part, "Notwithstanding section 3583 of Title 18, any sentence imposing a term of imprisonment under this paragraph shall, in the absence of such a prior conviction, impose a term of supervised release of *at least* 3 years in addition to such term of imprisonment." *Id*. (emphasis added). Section 841(b) has been interpreted as providing no ceiling for the length of supervised release terms under that section. *United States v. Chiles*, 137 F. App'x 870, 874 (6th Cir. 2005) (unpublished table opinion); *see also United States v. Gibbs*, 58 F.3d 36, 37–38 (2d Cir. 1995) (§ 841(b)(1)(C) provides "no maximum term of supervised release" and therefore "the statutory maximum term of supervised release is a life term.").

Further, the Sixth Circuit has consistently concluded § 3583(b) was not meant to override the supervised release requirements in § 841(b). In *United States v. Page*, 131 F.3d 1173, 1180 (6th Cir. 1997), *abrogated on other grounds by Johnson v. United States*, 529 U.S. 694, 700 (2000), the court held,

> [T]he specific provisions of section 841(b)(1)(C) prevail over the general provisions of section 3583(b)(2) when there is an apparent conflict. In regard to the present case, section 841(b)(1)(C) provides for a term of supervised release of "at least three years," not simply "three years." We believe that this language indicates an intent on the part of Congress to allow terms of supervised release of more than three years. There is no language in section 841(b) to suggest that Congress intended the authorized terms of supervised release to be limited by section 3583(b).

*See also United States v. Newborn*, 71 F. App'x 557, 564 (6th Cir. 2003) (citations omitted) ("the majority of the other

States Attorney's Office did not object, and Dominguez's supervised release was reduced by four months, with a new expiration date of April 18, 2012. On October 4, 2010, the modification was docketed. Dominguez also visited the Probation Office on April 26, 2011, was informed about his new end-date of supervised release, and signed a form indicating his acknowledgment of the change. Feb. 14, 2012 Hr'g. Tr. 7.

Then on September 14, 2011 Dominguez and three others gathered in a parking lot to sell several kilograms of cocaine to an undercover agent for $30,000. When confronted with the buyer's true identity, Dominguez attempted to evade arrest on foot. *Id*. at 26. He failed, and was arrested and charged in the Summit County Court of Common Pleas with trafficking cocaine in violation of the Ohio Revised Code. Dominguez pled guilty on December 5, 2011 and was sentenced to seven years in Ohio state prison. *Id*. Dominguez's state conviction became the basis for an additional violation hearing before the district court on January 9, 2012. There, for the first time, Dominguez questioned the October 2009 sentence. He argued that the court had no authority to "extend" the original supervised release term of three years, and that the term of supervised release ended in August 2011. Dominguez concluded the court could not impose a sanction for a supervised release violation one month later. The court requested briefing on the issue, and the hearing was continued to February 2012.

---

circuits to have addressed this issue has held that § 3583(b) does not limit the term of supervised release a district court may impose under § 841(b)(1)(C)."). But because Dominguez's appeal of his October 2009 sentence is untimely, this distinction is not critical to our analysis.

On February 14, 2012, the supervised release violation hearing resumed. Although Dominguez admitted to the new supervised release violation, he disputed whether he was lawfully subject to supervised release at the time of his arrest. The court explained that "while the court's order does not specifically note that the defendant's supervised release [was] revoked, obviously the court could not have sentenced the defendant to a term in the Bureau of Prisons if, in fact, revocation had not occurred." *Id*. at 16. The court went on, "There was no objection by counsel to the court's imposition of the order. So it was obvious to all involved, including counsel for the defendant, that the court had, in fact, revoked the defendant's supervised release." *Id*. at 16–17.

The court also found that while the new supervised release term had originally been extended beyond the 36-month maximum, this was identified by the Probation Office and modified to conform with § 3583(b)(2). Dominguez was then properly informed of the change. *Id*. at 17. The court concluded that at the time of his September 2011 violation, Dominguez was "on supervised release, and as borne out by the testimony, was continuing to be supervised at the time of the new law violation which brings him before the court today for purposes of sentencing." *Id*. at 18.

The court turned to the imposition of a sentence, and indicated it had reviewed the presentence investigation report from the original sentencing, as well as various probation reports. *Id*. at 23. The court established that the advisory Guidelines range was between 12 and 18 months after revoking Dominguez's supervised release because of his September 2011 violation. Defense counsel "concur[red] with the court's analysis." *Id*. at 28.

The court was not pleased with Dominguez's conduct. He had previously been given "the benefit of the doubt" with the hope that his previous transgression was an "isolated incident and not

6

likely to reoccur. That, unfortunately, was not the case." *Id*. at 28–29. The court noted that

Dominguez had attempted to sell three kilograms of cocaine for $30,000, and then had attempted

to flee from police. "All of that leads the court to nothing but the conclusion, sir, that you have not

learned from any earlier sanction that has been imposed, and there is a need for just punishment,

adequate deterrence, to protect the public, for a lengthy term of incarceration." *Id*. at 29. For those

reasons, the court imposed an 18-month sentence, at the top of the advisory Guidelines range, to run

consecutive and not concurrent to the state sentence. *Id*. Defense counsel asked the court to

reconsider the consecutive nature of the sentence, but did not raise any objections to the court's

application of the § 3553(a) factors. *Id*. at 30. The court explained that it would not reconsider the

sentence — that a consecutive sentence was appropriate given Dominguez's conduct. *Id*. at 30–31.

Dominguez was then sentenced, and raised this appeal.

## II

Dominguez did not protest the term of supervised release imposed on October 19, 2009 until

January 9, 2012[2] — well over two years later. The government objects that the attack is therefore

untimely. We agree.

Federal Rule of Appellate Procedure 4(b) requires that a criminal defendant file notice of

appeal within 14 days after "the entry of either the judgment or the order being appealed." Fed. R.

App. P. 4(b)(1)(A)(i). We are required to dismiss late-filed criminal appeals when the government

---

[2] In fact, Dominguez argued the sentence was improper only once he faced an additional 12–18 months in prison for violating the conditions of supervised release. When previous opportunities to question the sentence arose, Dominguez was compliant: he did not object to the sentence during the October 19, 2009 hearing; he did not object to the court order reducing his supervised release on October 4, 2010; and he did not object when he visited the Probation Office on April 26, 2011 to acknowledge the reduction in writing.

has raised the issue. *United States v. Gaytan-Garza*, 652 F.3d 680, 681 (6th Cir. 2011) (per curiam). In *Gaytan-Garza*, the defendant waited four years to file his appeal to the district court's judgment against him, and his appeal was sua sponte "dismissed as untimely." *Id*.

Several sister circuits agree. "When the government properly objects to the untimeliness of a defendant's criminal appeal, Rule 4(b) is mandatory and inflexible." *United States v. Frias*, 521 F.3d 229, 234 (2d Cir. 2008); *see also United States v. Watson*, 623 F.3d 542, 544 (8th Cir. 2010) (defendant's notice of appeal was untimely, the government properly objected, and the appeal was dismissed); *United States v. Lopez*, 562 F.3d 1309, 1314 (11th Cir. 2009) ("Because the government has not forfeited its objection to Lopez's untimely notice of appeal, we must apply the time limits of Rule 4(b)."); *United States v. Byfield*, 522 F.3d 400, 403 (D.C. Cir. 2008) (where defendant's appeal was untimely, and the government properly objected, the appeal was dismissed); *United States v. Sadler*, 480 F.3d 932, 942 (9th Cir. 2007) (where defendant's appeal was untimely and the government objected, the court was "required to dismiss [the] appeal"); *United States v. Turner*, 88 F. App'x 307, 310 (10th Cir. 2004) (defendant's attack on the legality of his sentence was "clearly time-barred under the Federal Rules of Appellate Procedure" where he did not file an appeal within the limits of Rule 4(b)); *Rivera v. United States*, 48 F.3d 1222, 1995 WL 94905, at *1 (7th Cir. 1995) (unpublished table opinion) (recognizing attack on defendant's sentence under 28 U.S.C. § 2255 was procedurally barred where defendant did not file direct appeal).

Here, Dominguez never appealed his October 2009 sentence. He did not object during the hearing when the sentence was imposed and he did not directly appeal the sentence. Dominguez first raised the issue on January 9, 2012, only after he was facing another supervised release violation.

The government, in contrast, timely objects to Dominguez's attack on the October 19, 2009 sentence — noting that it is late. Because the government has properly objected to the consideration of Dominguez's appeal, and the appeal is more than two years overdue, the requirements of Rule 4(b) must be enforced. Dominguez's challenge to the sentence imposed on October 19, 2009 and the subsequent term of supervised release will be dismissed. He was properly subject to supervised release at the time of his September 2011 violation.

**III**

Dominguez asserts that even if he violated the terms of his supervised release, the eighteen-month sentence he received in February 2012 is procedurally and substantively unreasonable. Dominguez criticizes the court's discussion of the § 3553(a) factors. Again, Dominguez's argument is without merit.

**A**

We review "sentences imposed following revocation of supervised release . . . under the same abuse of discretion standard that we apply to sentences imposed following conviction." *United States v. Johnson*, 356 F. App'x 785, 793 (6th Cir. 2009) (quoting *United States v. Polihonki*, 543 F.3d 318, 322 (6th Cir. 2008)).

This "deferential abuse-of-discretion standard" includes both a procedural and a substantive component. *United States v. Alexander*, 543 F.3d 819, 821–22 (6th Cir. 2008) (quoting *Gall v. United States*, 552 U.S. 38, 40 (2007)). A review of the procedural reasonableness of a sentence begins with ensuring that the district court correctly calculated the applicable Guidelines range. *United States v. Bolds*, 511 F.3d 568, 579 (6th Cir. 2007). The next consideration is whether the

district court considered the § 3553(a) factors to determine the appropriate sentence, and finally whether the court adequately articulated its reasoning for imposing the particular sentence chosen. *Id*. Significant procedural error includes, among other things, "failing to consider the § 3553(a) factors." *Gall*, 552 U.S. at 51; *United States v. Baker*, 559 F.3d 443, 448 (6th Cir. 2009).

Under the standard set forth in *United States v. Bostic*, 371 F.3d 865 (6th Cir. 2004), after sentencing defendants, district courts must "ask the parties whether they have any objections to the sentence just pronounced that have not previously been raised." *Id*. at 872. If a party then fails to clearly articulate an objection when given this final opportunity, that party "will have forfeited its opportunity . . . and thus will face plain error review on appeal." *Id*. at 872–73. When contemplating plain error, we consider "whether (1) there was an error, (2) which was plain, (3) that affected the defendant's substantial rights, and (4) that, in our discretionary view, seriously affects the fundamental fairness, integrity, or public reputation of judicial proceedings." *United States v. Trammel*, 404 F.3d 397, 401 (6th Cir. 2005) (citing *Johnson v. United States*, 520 U.S. 461, 466 (1997)).

If the sentence is procedurally sound, the next consideration is whether the sentence is substantively reasonable, taking into account the totality of the circumstances. *Alexander*, 543 F.3d at 822; *Baker*, 559 F.3d at 448. "District courts are charged with imposing 'a sentence sufficient, but not greater than necessary, to comply with the purposes' of sentencing." *Alexander*, 543 F.3d at 822 (quoting § 3553(a); *United States v. Foreman*, 436 F.3d 638, 644 n.1 (6th Cir. 2006)). There is a rebuttable presumption of reasonableness if the sentence falls within a properly-calculated

Guidelines range. *Baker*, 559 F.3d at 448; *Alexander*, 543 F.3d at 822; *United States v. Heriot*, 496

F.3d 601, 608 (6th Cir. 2007).

**B**

Dominguez claims his sentence is procedurally unreasonable. He believes the district court

erred by not considering the § 3553(a) factors and by imposing a sentence to run consecutive to his

state sentence. His arguments can be disposed in short order.

Defense counsel did not object to the court's recitation of the § 3553(a) factors, even after

the court requested objections pursuant to *Bostic*. *See* Feb. 14, 2012 Hr'g. Tr. 30. We therefore

review for plain error. *Bostic*, 371 F.3d at 872–73. When imposing a sentence, § 3553(a) requires

a court to consider a number of sentencing factors. But a sentencing court need not "recite the statute

in so many words," or simply invoke a set of "magic words" to achieve a proper sentence. *United*

*States v. Bridgewater*, 479 F.3d 439, 442 (6th Cir. 2007). Instead, the court must set forth enough

to indicate the sentence was "reasoned and properly founded." *Id*. *See also United States v. Salter*,

420 F. App'x 519, 522 (6th Cir. 2011) (unpublished) (district court's consideration of the

defendant's "history and circumstances," as well as the need "to promote respect for the law"

satisfied its obligation under § 3553(a) despite the lack of any "explicit reference to the listed factors

. . . as no such ritual incantation is required") (internal quotation marks and citation omitted).

A full review of the record here reveals that the district court did consider the relevant factors

in reaching a sentence that was sufficient, but not greater than necessary, to "comply with the

[sentencing] purposes set forth" in § 3553. Specifically, the court addressed the need to deter

Dominguez's pattern of uncontrolled behavior, the severity of his offense, and the important task of protecting society.

The court first outlined Dominguez's criminal history, and addressed the available sentences under the appropriate sentencing range. Feb. 14, 2012 Hr'g. Tr. 24–27. The court went on to establish that Dominguez had previously been given "the benefit of the doubt," but that he "thereafter chose to violate the law, not in some minor way or some minor fashion, but to be part of a large-scale cocaine trafficking organization." *Id*. at 29. "All of that leads the court to nothing but the conclusion, sir, that you have not learned from any earlier sanction that has been imposed, and there is a need for just punishment, adequate deterrence, to protect the public, for a lengthy term of incarceration." *Id*. The court's explanation demonstrates that it considered the § 3553 factors before imposing the sentence and articulated a reasoned, well-founded basis for its decision. The district court did not err, much less commit plain error in applying § 3553.

Dominguez also claims the consecutive sentence is procedurally unreasonable because the court did not address the relevant § 3553(a) factors when deciding whether the sentence should be imposed consecutively or concurrently to his state sentence. Dominguez did object to the consecutive nature of the sentence, *id*. at 30, and therefore that determination is reviewed for abuse of discretion. *Bolds*, 511 F.3d at 575 (quoting *United States v. Lalonde*, 509 F.3d 750, 769 (6th Cir. 2007)). On review, however, no such abuse is to be found.

As described above, the court adequately considered the applicable sentencing factors when imposing Dominguez's sentence. The Sixth Circuit has "never held that a district court is required to repeat a Section 3553(a) analysis in its consideration of the consecutive or concurrent nature of

12

a sentence." *United States v. Berry*, 565 F.3d 332, 343 (6th Cir. 2009). In *Berry*, the court concluded that "[r]equiring district courts to conduct a separate Section 3553(a) analysis for the concurrent or consecutive nature of the sentence would be repetitious and unwarranted, and . . . district courts have no such distinct obligation." *Id*. The district court's analysis of § 3553(a) was sufficient in the first instance, and did not bear repeating when determining whether a consecutive sentence was appropriate.

## C

Dominguez finally claims his sentence is substantively unreasonable, again alleging the court failed to consider the § 3553(a) factors. But as discussed at length, the district court considered Dominguez's criminal behavior, the nature of the offense he had committed, and the manner in which he had flouted the court's authority. The court also explicitly addressed the need for deterrence, and to protect society from Dominguez's conduct. Dominquez's contention does not support the proposition that his sentence is substantively unreasonable. His sentence of 18 months will stand.

## IV

We affirm.